**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| JOYCE A. CANE, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. CIV-06-432-FHS-SPS |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of the Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

The claimant Joyce A. Cane requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision should be REVERSED and REMANDED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act only "if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the

national economy[.]" *Id.* § 423(d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997), *citing Pacheco v. Sullivan*, 931 F.2d 695, 696 (10th Cir. 1991). The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not re-weigh the evidence or substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of [the] evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488

---

[1] Step one requires the claimant to establish she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id.* §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work the claimant can perform existing in significant numbers in the national economy, taking into account her age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

(1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on December 20, 1957, and was forty-eight (48) years old at the time of the administrative hearing. She has a high school education plus an associates degree in general science and has previously worked as an 18-wheel truck driver. The claimant alleges she has been unable to work since September 26, 2002, because of gout and depression.

## Procedural History

On August 21, 2003, the claimant protectively filed an application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-34, and on March 19, 2003, she filed for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. The applications were denied. ALJ Larry M. Weber conducted a hearing and determined that the claimant was not disabled on March 25, 2006. The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform a limited range of sedentary work, *i. e.*, lifting and/or carrying ten pounds occasionally and five pounds frequently; standing and/or walking for fifteen minutes at a time, up to two hours total in an eight-hour work day; sitting for thirty minutes at a time, up to six hours total in an eight-hour work day; no pushing or pulling with upper extremities; and no tasks requiring prolonged

gripping and grasping (Tr. 21). The ALJ concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform existing in significant numbers in the regional and national economies, *e.g.*, information clerk, receptionist, and food order clerk (Tr. 24).

## Review

The claimant contends that the ALJ erred: (i) by failing to include all the claimant's limitations in her RFC; and (ii) by finding that she had the RFC to perform the work identified at step five. In support of her first contention, the claimant argues that the ALJ failed to properly analyze the weight he gave the various medical opinions contained in the record. The undersigned Magistrate Judge finds this argument persuasive.

"An ALJ must evaluate *every* medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional." *See, e. g., Hamlin v. Barnhart,* 365 F.3d 1208, 1215 (10th Cir. 2004) [emphasis added] [internal citation omitted]. "An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Id.*, *citing Goatcher v. United States Department of Health & Human Services,* 52 F.3d 288, 290 (10th Cir. 1995). The ALJ clearly failed to follow these rules here. For example, although he mentioned the examinations performed by the claimant's surgeon/treating physician, Thomas C. Howard, M.D. (Tr. 22, 201-39), and the examining physician Charles N. Howard, Jr., M.D. (Tr. 22, 265-72), the ALJ did not explain the weight he assigned to the opinions of either of these physicians. This was particularly troublesome because the ALJ found these two opinions to be in conflict with one another, but gave no explanation as to the manner in

which he resolved the conflict.

Further, the ALJ referenced *one* of the RFC assessments completed by a non-examining agency physician, *i. e.*, the one limiting the claimant to "sedentary work with limited handling" (Tr. 23, 241-48), but he noted only that it "is given weight" because it has a reasonable conclusion and "is consistent with the rationale given" by the ALJ in arriving at his decision (Tr. 23), and he completely ignored other RFC assessments with different restrictions (Tr. 193-200, 277-84). Indeed, it is not entirely clear *which* RFC assessment the ALJ was actually considering; there were *three* non-examining agency RFC assessments in evidence with various limitations, reasoning and level of restriction (Tr. 193-200, 241-48, 277-84), and the one mentioned by the ALJ appears to have been based on the opinion of a consulting physician whom the ALJ chose not to credit (Tr. 22) and who did not examine the claimant until well after the date of the RFC. In any event, the ALJ wholly failed to explain why he favored the opinion of a consulting physician over that of the claimant's treating physician. *See, e. g., Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) ("The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all."), *citing* 20 C.F.R. §§ 404.1527(d)(1), (2) and 416.927(1), (2); Soc. Sec. Rul. 96-6p, 1996 WL 374180, at *2.

The ALJ committed a number of other errors as well in analyzing the medical evidence in the record. For example, in assessing the claimant's credibility, the ALJ failed in general to affirmatively link his credibility findings to the evidence, *see Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (noting that credibility findings "should be closely and

affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.") [quotation omitted], and in particular to discuss the standard applicable to his finding that the claimant received routine, conservative treatment and had not taken any narcotic pain medication (Tr. 22). *See Frey v. Bowen*, 816 F.2d 508, 517 (10th Cir. 1987) ("In reviewing the impact of a claimant's failure to undertake treatment on a determination of disability, we consider four elements: (1) whether the treatment at issue would restore claimant's ability to work; (2) whether the treatment was prescribed; (3) whether the treatment was refused; and, if so, (4) whether the refusal was without justifiable excuse. "), *citing Weakley v. Heckler*, 795 F.2d 64, 66 (10th Cir. 1986).[2] The ALJ also failed to consider the impact of the claimant's obesity on her other impairments (and ultimately on her ability to work) despite an abundance of evidence to this effect in the claimant's medical records (Tr. 182-83, 212, 225, 250-53, 256, 258-59, 261, 267-68, 298, 323, 325, 327-28).

Because the ALJ failed to properly analyze the medical evidence in this case, the

---

[2] The ALJ did not, for example, consider whether the claimant's failure to take treatment was justified by her inability to afford it or by the poor results of her prior surgical treatment. *See, e. g.*, *Thomas v. Barnhart*, 147 Fed. Appx. 755, 760 (10th Cir. 2005) ("[T]he ALJ failed to comment on the important evidence that treatment was inconsistent because of Mrs. Thomas's apparent inability to afford the medications. . . . Whether a person is being consistently treated with available medication is important probative information.") [unpublished opinion]. *See also Thompson v. Sullivan*, 987 F.2d 1482, 1489-90 (10th Cir. 1993). The claimant testified that she was receiving food stamps and had no income (Tr. 365) and that the carpal tunnel surgery which also removed some of her tophi was generally unsuccessful (Tr. 370). Her testimony was supported by her medical records, *e. g.*, Dr. T. Howard noted that the claimant was not improving after surgery and may have permanent nerve damage (Tr. 203, 207), she was given samples of many of her prescriptions (Tr. 250, 251, 252, 253, 257), she receives some prescription assistance from her church (Tr. 274, 328), and Dr. Brown, another treating physician, noted that "she has no insurance [so] we really need to choose a regimen she can afford," then he changed her blood pressure medication because he noted it was "very expensive and I do not think long term she could afford it." (Tr. 252). The ALJ made no mention of any of this evidence despite relying on the claimant's failure to have more treatment as demonstrating her lack of credibility.

decision of the Commissioner should be reversed and the case remanded to the ALJ for further analysis so the Court can assess "whether relevant evidence adequately supports the ALJ's conclusion[.]" *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). On remand, the ALJ should: (i) discuss and assign proper weight to all of the medical opinions contained in the record; (ii) perform a proper credibility analysis; (iii) redetermine the claimant's RFC; and, (iv) redetermine what work, if any, the claimant can perform with her RFC.

## Conclusion

The undersigned Magistrate Judge finds that correct legal standards were not applied by the ALJ and the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge RECOMMENDS that the decision of the Commissioner be REVERSED and the case REMANDED for further proceedings as set forth above. The parties are herewith given ten (10) days from the date of this service to file with the Court Clerk any objections with supporting brief. Failure to object to the Report and Recommendation will preclude appellate review of the judgment of the District Court based on such findings.

**DATED** this 8th day of January, 2008.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**